UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BOARD OF TRUSTEES OF THE AUTOMOBILE MECHANICS' LOCAL NO. 701 UNION AND INDUSTRY WELFARE FUND, ) ) ) ) Plaintiff, ) ) v. ) ) ROBERT LEE BROWN, an individual; and ) CASSANDRA SORENSEN a/k/a ) KASSANDRA SORENSEN, an individual, ) ) Defendants. ) | Case No. 12-cv-10268<br><br>Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Board of Trustees of the Automobile Mechanics' Local No. 701 Union and Industry Welfare Fund ("the Fund"), brought a claim against Defendants, Robert Lee Brown and Cassandra Sorensen, to recover money under § 502(a)(3) of the Employee Retirement Income Security Act ("ERISA"). Defendants have filed a joint motion to transfer this case, pursuant to 28 U.S.C. § 1404(a), to the District of Montana.

### BACKGROUND

For purposes of a motion to transfer, all well-pleaded allegations in the complaint are accepted as true unless controverted by affidavit. *Plotkin v. IP Axess, Inc.*, 168 F. Supp. 2d 899, 900 (N.D. Ill. 2001). The Fund is a fiduciary of the Automobile Mechanics' Local No. 701 Union and Industry Welfare Plan ("the Plan"). The Plan is a self-funded welfare benefit plan that provides medical and disability benefits for participants and is administered in Countryside, Illinois.

Brown and Sorensen are both residents of Vaughn, Montana. Sorensen is Brown's domestic partner. On September 17, 2004, Brown, a participant in the Plan, suffered a work-related bodily injury. The Plan expended a total of $35,728.55 in medical and short-term disability benefits on Brown's behalf as a result of the injury. (Am. Compl. ¶¶ 3-10.)

In 2005, Brown brought a workers' compensation claim with the Missouri Department of Labor, Division of Workers' Compensation. On or about April 23, 2012, Brown settled the workers' compensation claim for $112,500.00. (*Id*. ¶ 14.) Brown used a portion of that settlement money to purchase a recreational vehicle, which he transferred to a third party, a Mr. Cox. Brown also transferred a parcel of real property and part of the settlement amount to Sorensen. (*Id*. ¶¶ 16-17.)

The Fund brought this action against Brown in December 2012. The Fund added Sorensen as a Defendant in its First Amended Complaint, which was filed in November 2013. The Fund alleges that the Plan is entitled to reimbursement in the amount of $35,728.55 from Defendants. (*Id*. ¶ 26.) As a participant of the Plan, Brown executed a Subrogation and Reimbursement Agreement, which stipulates that the "Fund shall be entitled to reimbursement for the money the fund paid . . . for the claimant's benefits and necessary medical expenses incurred as a result of this occurrence." (*Id*. ¶ 12.) The Fund alleges that by refusing to reimburse the amount of $35,728.55, Brown has violated the terms of the Plan. (*Id*. ¶ 25.) The Fund seeks appropriate equitable relief to enforce the terms of the Plan and the reimbursement agreement under ERISA § 502(a)(3). (*Id.* ¶ 30.)

**ANALYSIS**

Pursuant to 28 U.S.C. § 1404(a), a district court may "for the convenience of parties and witnesses, in the interest of justice . . . transfer any civil action to any other district or division where it might have been brought." Broken down into its statutory factors, transfer is appropriate where: (1) venue is proper in both the transferor and the transferee courts; (2) the transfer will serve the convenience of the parties and witnesses; and (3) the transfer is in the interest of justice. 28 U.S.C. § 1404(a); *see Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986). The district court considers these factors in light of all the circumstances, on a case by case basis, and has the sound discretion regarding the weight accorded to each factor. *Coffey*, 796 F.2d at 219. In so ruling, the court may consider facts presented by way of "affidavit, deposition, stipulation, or other relevant documents." *Midwest Precision Servs., Inc. v. PTM Indus. Corp.*, 574 F. Supp. 657, 659 (N.D. Ill. 1983). Furthermore, the party seeking transfer bears the burden of establishing that the transferee court is clearly more convenient. *Coffey*, 796 F.2d at 219-20.

*Venue*

In this case, the first requirement is not in dispute. Both parties agree that venue is proper in the United States District Court for the Northern District of Illinois and the United States District Court for the District of Montana. The remaining factors are discussed below.

*Convenience of the Parties and Witnesses*

A transfer of venue must also serve the convenience of the parties and witnesses. Courts consider five "private" factors of the parties in evaluating convenience: (1) the plaintiff's initial choice of forum; (2) the *situs* of material events; (3) the relative ease of access to sources of

proof; (4) the convenience of the parties litigating in the respective forums; and (5) the convenience of the witnesses. *Amoco Oil Co. v. Mobil Oil Corp.*, 90 F. Supp. 2d 958, 960 (N.D. Ill. 2000).

<u>Plaintiff's Choice of Forum</u>

The plaintiff's choice of forum is usually entitled to a degree of deference in transfer of venue cases. *Moore v. Motor Coach Indus.*, 487 F. Supp. 2d 1003, 1006 (N.D. Ill. 2007). Although the chosen forum is important, it is not dispositive in the evaluation. *Amoco Oil Co.*, 90 F. Supp. 2d at 960; *see also Law Bulletin Publ'g, Co. v. LRP Publs.*, 992 F. Supp. 1014, 1017 (N.D. Ill. 1998) ("[W]hile a plaintiff's choice of forum is an important consideration in determining whether a motion to transfer should be granted, it is not absolute and will not defeat a well-founded motion to transfer."). The plaintiff's choice of forum also receives less deference "when another forum has a stronger relationship to the dispute or when the forum of plaintiff's choice has no significant connection to the *situs* of material events." *Moore*, 487 F. Supp. 2d at 1007.

Here, the Fund is administered in the Northern District of Illinois, the Fund's chosen forum. As such, this factor weighs against transfer. This factor may be overcome, however, when the other factors "point towards trial in an alternative forum." *Van Horn v. Graves*, No. 01-cv-5186, 2002 WL 27658, at *2 (N.D. Ill. Jan. 10, 2002) (citing *AAR Int'l, Inc. v. Nimelias Enters., S.A.*, 250 F.3d 510, 524 (7th Cir. 2001)); *see also Fidelity & Deposit Co. of Md. v. Advance Indus. Constr., LLC*, No. 05-cv-390, 2006 WL 752943, at*2 (N.D. Ill. Mar. 21, 2006) (holding that because neither the defendants nor events that formed the basis of

4

the claim had significant ties to the chosen forum, the plaintiff's "choice of forum deserves little weight in the resolution of the instant motion").

### *Situs* of Material Events

The next factor to consider is the *situs* of material events. Brown was injured in Missouri and also recovered on his workers' compensation claim in that state. The Fund is administered in Illinois. Brown's alleged failure to reimburse the Fund and his alleged transfer of funds to Sorensen and the third-party, Mr. Cox, occurred in Montana. As such, material events occurred in Illinois, Missouri and Montana. Therefore, this factor is neutral. *See Bd. of Trs. of Health & Welfare Dep't of Constr. & Gen. Laborers' Dist. Counsel of Chi. & Vicinity v. Kruzan*, No. 11-cv-03233, 2011 WL 6140530, at *4, *7 (N.D. Ill. Dec. 8, 2011) (in an ERISA subrogation action, district court held that *situs* factor was neutral where injury occurred and funds sought were located in the same state, but ERISA plan was administered in another state; the court also ultimately granted motion to transfer).

### Location of Proof

The next factor to consider is the location of proof. The Fund contends that the relevant sources of proof are located in Illinois; however, apart from a vague reference to its own representatives, it does not identify what those sources are. The Fund further argues that, due to the fact that the case has been pending since 2012, it needs no additional discovery with respect to Brown and that only minimal discovery is needed with respect to Sorensen. Defendants argue that the specific funds and real and personal property allegedly purchased with the settlement monies are all located in Montana, along with any relevant documentation. Therefore, this factor weighs slightly in favor of transfer.

5

The Convenience of the Parties

       The next factor is the convenience of the parties in litigating in the respective forums.  In

determining the convenience of the parties, courts "should consider their respective residences

and their ability to bear the expenses of litigating in a particular forum." *Hanley v. Omarc, Inc.*,

6 F. Supp. 2d 770, 776 (N.D. Ill. 1998).  However, courts cannot merely shift the inconvenience

of litigating in a specific forum from one party to another.  *Medi USA L.P. v. Jobst Inst., Inc.*,

791 F. Supp. 208, 211 (N.D. Ill. 1992).

       In this case, Plaintiff would be inconvenienced by having to transfer the case to Montana.

Plaintiff does business in Illinois and does not have an office in Montana.  Plaintiff would also be

required to obtain local Montana counsel.   Both Defendants are residents of Montana and have

limited economic means to travel and defend against this litigation.  However, this Court has

granted them both *in forma pauperis* status and has appointed counsel to defend them in this

District; as such, the expense of litigating in this forum has been lessened considerably.

Consequently, this factor weighs neither in favor nor against transfer.

                                The Convenience of the Witnesses

       The final factor to consider is the convenience of the witnesses.  "The convenience of

witnesses is often viewed as the most important factor in the transfer balance." *Rose v.

Franchetti*, 713 F. Supp. 1203, 1214 (N.D. Ill. 1989).  The convenience of third-party witnesses

is usually accorded more weight than party witnesses in considering whether transfer of venue is

proper. *See Kruzan*, 2011 WL 6140530, at *4.  The only potential third-party witness mentioned

in the Complaint is Mr. Cox, who resides in Montana.  However, it is unclear how crucial this

witness is to the outcome of the litigation, since the only allegations are that he was involved in the sale of real property. This factor slightly weighs in favor of transfer.

*The Interest of Justice*

Courts also consider whether transfer of venue serves the interest of justice. This includes evaluating public factors, such as "docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (internal citations omitted). This analysis is related "to the efficient functioning of the courts, not to the merits of the underlying dispute." *Coffey*, 796 F.2d at 221.

The parties cite competing statistics related to whether the case will proceed more efficiently in the Northern District of Illinois or the District of Montana. In 2013, the docket for the Northern District of Illinois was more congested compared to the District of Montana. The average caseload in the Northern District of Illinois was 563 pending cases per judge. In the District of Montana, the average caseload was 290 pending cases per judge. However, cases brought in the Northern District of Illinois proceed slightly quicker than those filed in the District of Montana. In 2013, the median time from filing to disposition in a civil case was 6.8 months in the Northern District of Illinois and 8.3 months in the District of Montana. *See* Comparison of Districts Within the Seventh Circuit – 12-Month Period Ending December 31, 2013, at http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementStatistics/2013/comparison-districts-within-circuit-december-2013.pdf&page=7. The difference in

average speed to trial cannot be determined since the District of Montana did not report median time from filing to trial. The relative difference in docket congestion is greater than the difference between the median times from filing to disposition. The average caseload of judges in the Northern District of Illinois is almost twice the average caseload of judges in the District of Montana. The median time from filing to disposition in the District of Montana is 1.5 months more than in the Northern District of Illinois. This difference in speed of disposition is insignificant. *See Coleman v. Buchheit, Inc.*, 03 C 7495, 2004 WL 609369, at *3 (N.D. Ill. Mar. 22, 2004) (stating that a median time difference from filing to disposition of less than three months would not greatly affect the speed at which the case would proceed to trial). Therefore, this factor is neutral.

Whether transfer of venue is appropriate also depends in part on the relationship of each community to the controversy and the respective desirability in resolving controversies in each locale. "The administration of justice is served more efficiently when the action is litigated in the forum that is closer to the action." *Carillo v. Darden*, 992 F. Supp. 1024, 1026 (N.D. Ill. 1998); *see also Hanley*, 6 F. Supp. 2d at 777 (holding that courts should look at whether a forum has an interest in resolving a dispute such that the venue is "closer to the action"). Defendants argue that Montana is closer to the action because they live there and their assets are located there. Defendants also argue that public policy favors transfer because ERISA states that one of its policies is to "protect . . . the interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C. § 1001(b). The Fund responds that Illinois is closer to the action because the Fund is administered here and because this forum has a strong interest in preserving the assets of the Fund and ensuring that other participants do not abuse the Fund and its process.

The Fund also points out that this case has been pending for over a year in this district and that Defendants only brought this motion to transfer recently. For this reason, the Fund argues that it would be more efficient to keep the case here. "Generally, a motion to transfer should be made early in the proceeding," although this is not, by itself, reason enough to deny a motion to transfer. *Blumenthal v. Mgmt. Assistance, Inc.*, 480 F. Supp. 470, 471 (N.D. Ill. 1979). Defendants respond that Sorensen was only recently added as a Defendant and that this has substantially changed the litigation. However, it appears that Sorensen's role is limited as a Defendant. Therefore, this factor weighs against transfer.

Another factor to consider in evaluating the interest of justice is whether the transferor or transferee court has familiarity with the applicable law. The Supreme Court has adjudicated on several claims that a self-funded ERISA-governed welfare plan brought against its participants under 29 U.S.C. § 1132(a)(3). *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002); *Sereboff v. Mid Atl. Med. Servs.*, 547 U.S. 356 (2006); *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537 (2013). These decisions apply to both the Northern District of Illinois and the District of Montana. Each district has addressed the subject in numerous cases. *See, e.g.*, *Gutta v. Standard Select Trust Ins. Plans*, 530 F.3d 614 (7th Cir. 2008); *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083 (9th Cir. 2012). Neither district appears to be relatively more familiar with the applicable law; this factor is neutral in this case.

On balance, the interest of justice weighs against transfer. Considering the degree of deference given to the Fund's choice of forum, Defendants have failed to carry their burden of showing that this case should be transferred.

9

## CONCLUSION

Defendants' Joint Motion to Transfer Venue [47] is denied.

Date: August 14, 2014

JOHN W. DARRAH
United States District Court Judge